Upon review of the competent evidence of record with reference to the errors assigned and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission upon reconsideration of the evidence modifies and affirms the Opinion and Award of the Deputy Commissioner as follows:
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing and in a Pre-Trial Agreement as:
 STIPULATIONS
1. The parties are bound by and subject to the North Carolina Workers' Compensation Act.
2. At all relevant times, an employment relationship existed between plaintiff and defendant-employer.
3. The Travelers Insurance Company was the carrier on the risk.
4. Plaintiff's average weekly wage was $648.00 yielding a compensation rate of $432.02.
5. The date this claim allegedly occurred was January 22, 1999.
6. Plaintiff last worked for defendant-employer on February 17, 1999.
7. Plaintiff's medical records were stipulated into evidence as Stipulated Exhibit 1.
8. Plaintiff's recorded statement was stipulated into evidence as Stipulated Exhibit 2.
9. The issues before the Full Commission are: (i) whether plaintiff suffered a specific traumatic incident arising out of and in the course of her employment with defendant-employer; and (ii) if so, what compensation, if any is due plaintiff?
 *********** EVIDENTIARY RULINGS
The objections raised in the depositions of Gregory N. Ball, M.D. and Stephen V. Dreskin, M.D., are OVERRULED.
 ***********
Based upon all of the competent evidence from the record herein, the Full Commission finds as follows:
 FINDINGS OF FACT
1. At the time of hearing before the deputy commissioner, plaintiff was thirty-five (35) years old. Plaintiff worked as a contract registered nurse for defendant-employer.
2. Defendant-employer, Travel Med USA is a company located in Charlotte, North Carolina that contracts to provide nurses and radiation technologists to hospitals around the United States. Travel Med provides its contract employees with benefits and workers' compensation coverage. Travel Med requires hospitals to complete accident reports when contract employees are injured.
3. On the weekend of January 22, 1999, plaintiff worked as a contract registered nurse for Travel Med at Columbia Park Ridge Medical Center in Chattanooga, Tennessee. As part of her responsibilities, plaintiff was assigned to care for a comatose, obese patient in the Surgical Critical Care Unit who weighed approximately 260 pounds. Plaintiff was required to lift, turn and move this obese, comatose patient. Plaintiff is 5 feet, 4 inches tall and weighed about 150 pounds at the time.
4. Plaintiff usually had assistance from another nurse, but no one was available to assist during most of the January 22 and 23 work shift. For most of the evening, plaintiff performed the assigned tasks by herself. Plaintiff moved, turned and lifted this comatose, obese patient without assistance numerous times during the shift.
5. Around midnight, plaintiff's back began to burn and hurt after lifting, turning, and moving the obese, comatose patient. Plaintiff reported to her supervisor that her back was hurting, took some Advil for pain and completed the shift. Plaintiff did not believe she had injured her back. When her pain persisted, plaintiff contacted defendant-employer on January 25, 1999 and reported she had hurt her back the previous weekend and requested instruction concerning medical treatment.
6. Defendant-employer instructed plaintiff to seek treatment from Dr. Charles Crump. On February 1, 1999, plaintiff presented to Dr. Crump complaining of low back pain radiating into in her right leg. Dr. Crump ordered an MRI which showed a disk protrusion at L5-S1 and a herniated disk at L4-5. Dr. Crump referred plaintiff to Dr. Todd Bonvallet, an orthopedic spine specialist, but plaintiff couldn't get an appointment before April. In the interim, plaintiff sought treatment from Dr. Michael Randle, a neurosurgeon in Albany, Georgia who diagnosed a herniated disk at L4-5 based upon the MRI and his examination. Dr. Randle also ordered a myleogram and referred plaintiff to physical therapy and a pain center. Plaintiff was given an epidural steroid injection on March 18, 1999.
7. On April 1, 1999, plaintiff began treatment with Dr. Todd Bonvallet. Plaintiff complained of severe back pain, numbness and tingling in her left leg and foot and bowel pressure. Dr. Bonvallet noted that plaintiff had a herniated disk at L4-5 and referred her to Dr. Stephen V. Dreskin at a pain management center for additional epidural steroid injections. Dr. Bonvallet examined plaintiff after each injection.
8. Dr. Stephen V. Dreskin, a board certified anesthesiologist and pain management specialist first treated plaintiff on April 19, 1999 upon referral from Dr. Bonvallet. Plaintiff complained of low back pain radiating into her left, greater than right lower extremity. Dr. Dreskin performed the two epidural steroid injections ordered by Dr. Bonvallet. The epidural steroid injections did not provide long term relief of plaintiff's pain.
9. When plaintiff complained of worsening pain in July, 1999, Drs. Bonvallet and Dreskin discussed the feasibility of an intradiscal electrothermalcoagulation (IDET) procedure.
10. Dr. Dreskin's partner, Dr. Gregory N. Ball also treated plaintiff. Dr. Ball diagnosed a disk herniation at L4-5 with radicular symptoms and significant discogenic pain.
11. Dr. Ball performed the IDET procedure on plaintiff on August 18, 1999. This procedure involves placing a small catheter inside a disk that has an annular tear. This catheter has in it a heating element. The heating element is a thermocoupling device that converts radio frequency energy into thermal energy. The catheter heats up at a very controlled temperature to raise the temperature of the outside wall of the disk to a degree that will denervate the back wall of the disk and remodel the collagen in the disk. It burns the nerve ending in the back wall of the disk that is responsible for the pain in the back when a person stands, walks, or sits a long time.
12. Plaintiff's condition improved significantly after the IDET procedure. Before, she could not move around much, her pain was worsening and she had occasional bladder incontinence. By February 2, 2000, plaintiff only complained of persistent mild pain in her low back which worsened on excessive exertion or prolonged sitting. She was only taking Extra Strength Tylenol 2-3 times a day for pain.
13. Dr. Ball was of the opinion that plaintiff had "pretty much plateaued as far as continued improvement" by February 2, 2000 and that plaintiff was capable of returning to light duty work, including nursing duties with restrictions of no lifting over 25 pounds. He opined for the first time during his deposition testimony on April 18, 2000 that plaintiff retained a permanent partial disability rating of 5-10 percent. He did not specifically determine that plaintiff had reached maximum medical improvement and did not give a specific impairment rating.
14. Dr. Dreskin was of the opinion that as of February 2, 2000, plaintiff was capable of light duty work with restrictions of not lifting over 15 pounds repetitively and 25 pounds total, no repetitive stooping and bending and that plaintiff's work should be limited to 8 hours a day, 5 days per week.
15. Plaintiff was unable to participate in the usual physical therapy and reconditioning recommended after the IDET procedure due to limited finances. Therefore, Dr. Dreskin still recommends a short physical therapy program to strengthen plaintiff's lumbar spine before declaring her at maximum medical improvement.
16. Drs. Bonvallet, Ball and Dreskin are of the opinion and the Full Commission finds that plaintiff's injury to her back was causally related to lifting the comatose, obese patient around midnight of January 22, or the early morning of January 23, 1999.
17. Plaintiff has not returned to work and has been incapable of earning wages in any employment since February 18, 1999 as a result of her back injury.
18. Plaintiff had back pain in June, 1998 while working for defendant-employer after catching an obese patient who began to fall while being transferred from a chair to a bed. Plaintiff's pain resolved after several weeks of treatment. After July, 1998, plaintiff received no further treatment for her back until after the incident on or about January 22, 1999 which is the subject of this claim. From December 7, 1998 until the specific traumatic incident resulting in injury to her back around midnight on or about January 22, 1999, plaintiff handled all of her nursing duties without experiencing problems with back pain.
19. Plaintiff's medical records of February 6, 1995 also indicate that she reported a couple of episodes of low back pain which resolved after treatment with antibiotics. There is no evidence that these temporary symptoms were related to any trauma or pre-existing back condition.
20. During her January 22, 1999 workshift, around midnight, plaintiff sustained an injury to her back as a direct result of a specific traumatic incident arising out of and in the course of her employment with defendant-employer. Plaintiff's injury is compensable.
21. Based on the greater weight of the evidence, plaintiff has not reached maximum medical improvement.
22. As a direct and proximate result of her injury by accident, plaintiff sustained a herniated disk at L4-5 centrally and to the right side and a minimal midline and right paracentral disk protrusion at L5-S1. Plaintiff is entitled to compensation for total disability from February 19, 1999 and continuing until she returns to work or until further order of the Commission.
 ***********
Based on the foregoing stipulations and findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Around midnight of January 22, 1999 or during the early minutes of January 23, 1999, plaintiff sustained an injury to her back as a direct result of a specific traumatic incident of the work assigned arising out of and in the course of her employment with defendant-employer which resulted in a herniated disk at L4-5 and a disk protrusion at L5-S1. Plaintiff's injury is compensable. N.C. Gen. Stat. § 97-2(6).
2. As a result of her compensable injury, plaintiff is entitled to compensation for temporary total disability from February 19, 1999 and continuing until she returns to work or until further order of the Commission. N.C. Gen. Stat. § 97-29.
3. Plaintiff is entitled to receive medical treatment at defendants' expense for her compensable injury so long as such treatment is reasonably designed to provide relief, effectuate a cure or lessen plaintiff's period of disability. N.C. Gen. Stat. § 97-25.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay to plaintiff temporary total disability compensation at the rate of $432.02 per week from February 19, 1999 and continuing until she returns to work or until further order of the Commission. Any amount which has accrued shall be paid to plaintiff in a lump sum.
2. Defendant shall pay all medical expenses incurred or to be incurred in the future resulting from plaintiff's compensable injury when bills for same have been approved through procedures adopted by the Commission.
3. A reasonable attorney's fee of twenty-five (25) percent of the compensation due plaintiff under Paragraph 1 of this Award is approved for plaintiff's counsel and shall be paid as follows: twenty-five (25) percent of the lump sum due plaintiff shall be deducted and paid directly to plaintiff's counsel; thereafter, plaintiff's counsel shall receive every fourth check.
4. Defendants shall pay the costs due this Commission.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/_______________ DIANNE C. SELLERS COMMISSIONER
 S/______________ RENE C. RIGGSBEE COMMISSIONER
BSB:md